UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                           )  COURT FILE
UNITED STATES of AMERICA    )  NOS. 19-CR-75 (ECT/HB)
                           )        19-CR-76 (ECT/HB)
        vs.                )
                           )  Courtroom 3B
OTIS RAY MAYS, JR.          )  Friday, February 7, 2020
                           )  St. Paul, Minnesota
                           )  11:30 A.M.
------------------------------------------------------------

                **S E N T E N C I N G**

           BEFORE THE HONORABLE ERIC C. TOSTRUD
               UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S:**

**For the Government:**    **OFFICE OF THE U.S. ATTORNEY**
                          By:  MATTHEW S. EBERT
                               Assistant U.S. Attorney
                          600 United States Courthouse
                          300 South Fourth Street
                          Minneapolis, Minnesota  55415

**For the Defendant:**     ROBERT D. RICHMAN, ESQUIRE   **(19-CR-75)**
                          Post Office Box 16643
                          St. Louis Park, Minnesota  55416

                          **UNIVERSITY OF ST. THOMAS SCHOOL OF LAW**
                          By:  RACHEL K. PAULOSE, ESQUIRE
                          1000 LaSalle Avenue - Suite 400
                          Minneapolis, Minnesota 55403 **(19-CR-76)**

                **TIMOTHY J. WILLETTE, RDR, CRR, CRC**
       Official Court Reporter - United States District Court
        Warren E. Burger Federal Building & U.S. Courthouse
               316 North Robert Street - Suite 146
                    St. Paul, Minnesota  55101
                          651.848.1224

```
1          (11:26 a.m.)

2                      P R O C E E D I N G S

3                          IN OPEN COURT

4          (Defendant present)

5              THE COURT:  Good morning, everyone.  Please be

6      seated.

7              We're here this morning for sentencing in United

8      States of America versus Otis Ray Mays, Jr.  We have two

9      criminal file numbers here.  The first is 19-75 and the

10     second is 19-76.

11             I'll ask counsel to note their appearances for the

12     record, please, starting with the Government.

13             MR. EBERT:  Good morning, Your Honor.  Matthew

14     Ebert on behalf of the United States, and I'm standing in

15     today in place of John Docherty, who is not able to be

16     present.

17             THE COURT:  Good morning.

18             MR. EBERT:  Good morning.

19             MR. RICHMAN:  Robert Richman for Mr. Mays on

20     19-75.  Mr. Mays is also present.

21             THE COURT:  Good morning.

22             MR. RICHMAN:  Good morning, Your Honor.

23             MS. PAULOSE:  Your Honor, Rachel Paulose for

24     Mr. Mays on 19-76.  Good morning.

25             THE COURT:  Good morning.
```

 1              All right.  Mr. Mays previously pleaded guilty to

 2     receipt of child pornography in violation of 18 U.S.C.,

 3     Section 2252(a)(2) and (b)(1), and wire fraud in violation

 4     of 18 U.S.C., Section 1343.

 5              Mr. Richman and Ms. Paulose, you have received a

 6     copy of the PSR and the addendum and discussed that with

 7     Mr. Mays?

 8              MR. RICHMAN:  Yes, Your Honor.

 9              THE COURT:  Okay.  And I understand we have a

10     number of objections here, and what I thought I would do --

11     let me just actually confirm first.

12              Mr. Ebert, as I understand it, the Government has

13     no objections to the PSR, is that correct?

14              MR. EBERT:  That is correct, Your Honor.

15              THE COURT:  Thank you.

16              All right.  What I thought I'd do is just sort of

17     group these objections together by paragraph in the PSR.  I

18     thought I'd describe the objections and then give you an

19     opportunity for further argument if that's something you

20     want to do here today.

21              So we've got three objections to paragraph 14 of

22     the PSR.  First, Mr. Mays objects to paragraph 14 insofar as

23     it states that S.D., the then minor victim of the child

24     pornography offense, identified the defendant and two others

25     as individuals who played a role in her being commercially

1    sex trafficked.  Mr. Mays denies that he played a role in

2    S.D. being sex trafficked.

3           Then second, again with respect to paragraph 14,

4    Mr. Mays denies that he was a member of the Black P Stones

5    gang or was involved with other gang members in commercial

6    sex trafficking activity.  He argues that this allegation

7    should be removed from the PSR because it may adversely

8    affect his conditions of confinement.

9           And third, again with respect to paragraph 14,

10    Mr. Mays states that paragraph 14 does not mention that the

11    video which Mr. Mays voluntarily provided to the police is

12    the one he created to develop evidence of sex trafficking by

13    R.H.

14           That's a fair summary of Mr. Mays' objections to

15    paragraph 14?

16           MR. RICHMAN:  Yes, Your Honor.

17           THE COURT:  Okay.  Anything further that you would

18    like to say about or with respect to those objections?

19           MR. RICHMAN:  Your Honor, obviously these are

20    factual objections.  The way -- the only way that the Court

21    can resolve them is, if the Court were intending to rely on

22    any of these facts in sentencing, would be for the

23    Government to ask for an evidentiary hearing to establish

24    these facts as valid sentencing factors.  The Government has

25    not asked for an evidentiary hearing, and so as we stand

1     here today, there is no evidence before the Court from which

2     the Court can accept any of these allegations.

3               THE COURT:  Thank you.  Mr. Ebert, do you wish to

4     be heard with respect to those objections to paragraph 14?

5               MR. EBERT:  Yes, please, Your Honor.

6               I think an objective reading of paragraph 14 is

7     that this is a recitation of events of how certain matters

8     came upon the radar screen of local law enforcement and

9     subsequently federal law enforcement.  Paragraph 14 does not

10    read under in my view, Your Honor, respectfully, any

11    objective reading, as an assertion of the truth of the

12    matter that this defendant or any other individual is in

13    fact a gang member or in fact has done certain other

14    activities.  It's merely a recitation of the chronology and

15    of the procedure of the events in 2017 that gave rise to

16    matters coming to the attention of law enforcement.

17              I don't, furthermore, think that the Probation

18    Office or the Government is asserting that the Court should

19    make a finding about gang membership or any other matters

20    that are being addressed by Counsel.  This is simply a

21    factual recitation which is commonplace in virtually every

22    PSR in the federal system.  So I think that the way that it

23    stands is the way that it should stand and I think that the

24    probation officer's recitation of the procedural and factual

25    predicate is correct.

1          THE COURT:  Thank you.

2          MR. EBERT:  Thank you.

3          THE COURT:  Mr. Richman, anything further?

4          MR. RICHMAN:  Your Honor, I think the allegation

5     about the Black P Stones gang stands somewhat apart.  The

6     presentence report states:  "[P]olice suspected the

7     defendant was a member of the Black P Stones gang ...."

8     Whatever that suspicion was based on, it should not be in

9     the presentence report.  That's the type of allegation that

10    the Bureau of Prisons will rely on in making custody

11    classifications and the Bureau of Prisons is not going to

12    make the nuanced, lawyerly distinction that has been made by

13    the Government here.  That allegation should be deleted.

14          With respect to the rest, as long as my colleague

15    has suggested that no one is suggesting that those

16    allegations are true, we have no problem with that, but with

17    respect to the Black P Stones gang, that should be deleted.

18          THE COURT:  Thank you.  I understood the material

19    in paragraph 14 as the Government did, as allegations,

20    nothing more, nothing less, that explained the background

21    leading up to the charges in this action, and the

22    allegations recorded in paragraph 14 of the PSR do not

23    affect the guidelines calculations and I will not consider

24    them in sentencing Mr. Mays.

25          The same is true with respect to Mr. Mays'

1   objection that the PSR omits that he provided a video to

2   Richfield police voluntarily.  If that allegation were

3   included, again, it would not affect the guideline

4   calculation and I will not consider its absence in

5   sentencing Mr. Mays.

6         All right.  Let's move to the next objection,

7   which is to paragraph 15 of the PSR.

8         Paragraph 15 states that during an interview with

9   the FBI and Richfield police:

10        "S.D. stated that the defendant and another

11   individual had discussed selling S.D. for commercial sex

12   acts, and the defendant had sex with S.D. on three separate

13   occasions without her consent as S.D. felt she had no

14   choice."

15        Mr. Mays denies that he ever discussed selling

16   S.D. for commercial sex.  He admits that he had sex with

17   S.D. twice, not three times, denies that the sex was

18   nonconsensual.  He says the claim that Mr. Mays essentially

19   raped S.D. is not supported by the evidence and should be

20   deleted from the PSR because S.D. was above the age of

21   consent at the time the two had sex.  S.D. never claimed she

22   refused his advances, that Mays forced or coerced her, or

23   that Mays demanded sex in any way.

24        Mr. Richman, anything further to say with respect

25   to that series of objections to paragraph 15?

1          MR. RICHMAN:  No, Your Honor.  The Court's summary

2     I think encapsulates my objections.

3          THE COURT:  Okay.  Mr. Ebert, anything the

4     Government would like to add or say with respect to those

5     objections?

6          MR. EBERT:  Briefly, Your Honor.

7          Once again, I think the Probation Office has

8     correctly and fulsomely recounted the very facts that give

9     rise to why the defendant is here today, and to sort of

10     tinker or try to challenge S.D.'s view of facts I think is

11     unwarranted and I think the way that it currently reads is

12     an accurate submission that reflects what S.D. has told law

13     enforcement and Probation.  It also contains statements, to

14     the extent that they are true, that Defendant thinks are the

15     truth.  Why certain portions should be removed unnecessarily

16     at the defendant's say-so is not clear and I think the way

17     that it's worded currently should stand.

18          Thank you.

19          THE COURT:  Thank you.  Mr. Richman?

20          MR. RICHMAN:  Your Honor, my only concern about

21     that is that the Government has argued in its sentencing

22     pleading that the sexual relations between S.D. and Mr. Mays

23     was nonconsensual.  They stated that as a fact

24     notwithstanding the fact that Mr. Mays has disputed it in

25     the presentence report and the Government has not requested

1    an evidentiary hearing.  But if the Government is now saying

2    that it will stand down from that allegation and ask the

3    Court not to consider that unsubstantiated claim, then the

4    Court need not make findings.

5              THE COURT:  Thank you.  Mr. Ebert?

6              MR. EBERT:  Your Honor, if I could just be heard.

7              THE COURT:  Sure.

8              MR. EBERT:  The Government is not standing down

9    from the contention which is firmly rooted in the factual

10   record before the Court that this was not consensual sexual

11   intercourse.

12             Before the Court are two versions of events, one

13   that has been provided to the Probation Office through the

14   statements that S.D. has made, and she has submitted that it

15   was nonconsensual.  She was a minor.

16             A conflicting view of that comes from a convicted

17   fraudster, and on that basis alone I think there's ample

18   basis for the Court to credit the version of events from the

19   minor victim who the defendant engaged in sex acts with.

20   And if the Court wants me to go into any further details

21   about the nature of some of the activities in the videos, I

22   can do that to shed further light on the nonconsensual

23   nature of his intercourse with a young woman, a girl.

24             Thank you.

25             THE COURT:  Thank you.  I don't intend today as

1    part of this proceeding to resolve the dispute about whether

2    that sex was or was not consensual.  Not because I don't

3    believe or credit one person's story or another based on the

4    materials that are before me, but because it doesn't affect

5    sentencing.  It affects neither the guidelines calculation

6    nor any other element of the sentence that I think should be

7    imposed, or at least following the law as it suggests I'm

8    required to do in reaching an appropriate sentencing

9    decision here today.

10           So for that reason or for those reasons, I

11   determine that no ruling is necessary, again because the

12   objected to allegations that are recorded in paragraph 15 of

13   the PSR do not affect the guidelines calculation and I will

14   not consider them in sentencing Mr. Mays here today.

15           All right.  The next objection concerns the

16   proposed enhancement under U.S. Sentencing Guidelines

17   Section 3B1.3.  That guideline provides that "if [a]

18   defendant abused a position of public or private trust ...

19   in a manner that significantly facilitated the commission of

20   the offense," then we are to increase the offense level by

21   two levels.  The enhancement "may not be employed if an

22   abuse of trust or skill is included in the base offense

23   level or specific offense characteristic."  At the same

24   time, a defendant need not actually be in a position of

25   public or private trust, but rather the adjustment applies

1   "in a case in which the defendant provides sufficient

2   indicia to the victim that the defendant legitimately holds

3   a position of private or public trust when, in fact, the

4   defendant does not."

5           Ms. Paulose.

6           MS. PAULOSE:  Thank you, Your Honor.

7           To apply 3B1.3 in this case would be virtually

8   unprecedented.  There are only a handful -- for the reasons

9   that Your Honor I think has already quoted from the

10  sentencing guidelines.

11          As to the law, 3B1.3 is very rarely -- well, is

12  prohibited from being applied where the base offense level

13  already reflects the fraud as it does in this case, as it

14  would in any classic fraud case.  And so that is a legal

15  prohibition that is reflected in the case law of the Eighth

16  Circuit as well as this district.  If this enhancement were

17  used, any run-of-the-mill fraudster could be subject to this

18  enhancement for abuse of trust given that every fraud case

19  involves some abuse of trust, some sort of broken

20  relationship.

21          As to the facts, Your Honor, it's the burden of

22  the PSR to show why any alleged special skill furthered the

23  crime in this offense.  So even if someone had training as a

24  doctor, or an attorney, or a bank executive, the PSR needs

25  to show how that furthered the crime in this case, and

1    there's no evidence that any special skill was used to

2    further the crime in this case.

3            First of all, even the Government agrees and

4    pointed out in its sentencing memo that Mr. Mays is not an

5    attorney, has no special skill, has a high school education,

6    and go out of their way to point out his lack of special

7    skill or education.

8            Secondly, there is nothing that Mr. Mays did that

9    would replicate what a lawyer does that furthered or

10   concealed this crime.

11           For example, he didn't file court pleadings.  He

12   didn't -- to use a doctor example, he didn't prescribe

13   medication that he would have otherwise been prohibited from

14   doing.  He didn't use the trust in the way that would have

15   been concealed because of the lawyer's status.

16           So to apply it in this case we think would be

17   inconsistent with the law of this district and the Eighth

18   Circuit.  There are only a handful of cases where the

19   enhancement is actually applied for someone who doesn't

20   possess a professional degree or specialized training, and

21   in those cases the Government has proven that that training

22   was used to advance the skill in a way that is not present

23   here.

24           We do note, of course, that the Government did not

25   advocate for this at anytime and of course it would be a

1    violation of the plea agreement for them to do so now.

2            Thank you, Your Honor.

3            THE COURT:  Thank you.  Mr. Ebert, does the

4    Government have anything to say about the application of

5    this enhancement?

6            MR. EBERT:  No, Your Honor, other than that it is

7    of course the case that the October 3rd, 2019 plea agreement

8    binds the Government in that regard.

9            THE COURT:  Thank you.

10           All right.  I'm going to overrule this objection.

11   I do not understand the law to say that abuse of trust or

12   skill is included in the base offense level.  I believe it

13   is not.

14           I also find on the facts here that Mr. Mays

15   provided sufficient indicia to victims E.G.W. and I.M.W.

16   that he legitimately held a position of trust as a lawyer to

17   facilitate the commission of the offense, and to make that

18   finding I'm thinking about three or four specific facts in

19   particular here.

20           First, he preyed on the victims in a courthouse.

21   He asserted not only that he was an attorney, but also

22   provided a law firm name.  He offered legal advice, or

23   advice that any lay person would understand is legal,

24   regarding legal problems.  The entire scheme, I think, was

25   predicated on him being a lawyer and the victims believed

1    his position as a lawyer allowed him to resolve the

2    contrived legal matters that were central to Mr. Mays'

3    scheme.  So I'm going to overrule that objection.

4           Lastly, Mr. Mays objects to paragraph 67 of the

5    PSR which adds one point to the defendant's criminal history

6    points based on his conviction for giving a peace officer a

7    false name.

8           Mr. Richman?

9           MR. RICHMAN:  Your Honor, this point does not

10   change the Criminal History Category, but I wanted to

11   preserve the objection, but I have nothing to add from

12   what -- the position that has been summarized in the

13   addendum to the presentence report.

14           THE COURT:  Thank you.  Mr. Ebert?

15           MR. EBERT:  Just briefly, Your Honor.

16           I think the Probation Office has sufficiently

17   responded with the relevant provisions to demonstrate that a

18   one-point assertion for that criminal violation's

19   appropriate and I think Probation has it correct.

20           THE COURT:  Okay.  I'll sustain that objection.

21   Mr. Richman pointed out that it doesn't impact Mr. Mays'

22   Criminal History Category, because even if resolved in his

23   favor he has eight criminal history points which still

24   places him in Criminal History Category IV, but I will

25   sustain that objection nonetheless.

1          All right.  Anything further, Mr. Richman?

2          MR. RICHMAN:  Do you mean as to the presentence

3    report objections, or as to sentencing arguments?

4          THE COURT:  No, as to the -- sorry -- as to the

5    presentence report objections.

6          MR. RICHMAN:  No, Your Honor.

7          THE COURT:  Thank you.  Ms. Paulose, anything

8    further as to the PSR?

9          MS. PAULOSE:  No, thank you, Your Honor.

10          THE COURT:  Mr. Ebert?

11          MR. EBERT:  No, Your Honor.

12          THE COURT:  All right.  So with the exception of

13    the one objection that I sustained then, I'll adopt as

14    findings of the Court the factual statements contained in

15    the PSR, again, except as modified by my rulings here.

16          I'll grant a two-level downward adjustment in the

17    offense level for acceptance of responsibility.

18          Mr. Ebert, does the Government move for an

19    additional one-level reduction in the offense level for

20    acceptance of responsibility?

21          MR. EBERT:  Your Honor, is it possible to reserve

22    that issue until the end of today's proceedings?

23          THE COURT:  Why don't you come up to the podium if

24    you could.  That microphone I don't think is either on or we

25    can't hear you.

1          MR. EBERT:  I'm sorry, Your Honor.

2          THE COURT:  That's all right.

3          MR. EBERT:  Sorry about that to the court

4     reporter.

5          Is it possible to reserve that issue until later

6     in the proceedings after we've had further opportunity to

7     perhaps hear from the defendant?

8          THE COURT:  Mr. Richman?

9          MR. RICHMAN:  I object to that, Your Honor.  Under

10    3E1.1(b), after the first two points have been awarded for

11    acceptance of responsibility, the third point is premised on

12    the timeliness of the plea.  The Government has agreed at

13    the time of the plea agreement that Mr. Mays' plea was

14    timely.  I object to the suggestion that if the Government

15    doesn't like Mr. Mays' sentencing allocution, they can at

16    their whim withhold the third point, and so we think that it

17    is timely for the Government to make the motion now.

18          THE COURT:  Mr. Ebert, if you'll just give me a

19    minute here, I'm going to quickly read 3E1.1(b).

20       (Pause)

21          THE COURT:  I agree with Mr. Richman on this one,

22    Mr. Ebert, but would add to that that I am very interested

23    in hearing Mr. Mays' allocution myself today and obviously

24    what he says matters a great deal to me.  I don't know if

25    that places you -- or gives you any comfort, but --

1          MR. EBERT:  Your Honor, I don't mean to create

2     unneeded controversy.  The point I'm trying to make, I

3     think, is the one that the Court just articulated, which is

4     that at the end of the day, whatever modicum of credit will

5     continue to come to Defendant for acceptance of

6     responsibility I think would be based in part upon what he

7     has to say to the Court about the crimes.  And so if the

8     Court is at this point inclined to give the two levels, then

9     consistent with 3E1.1, the Government would accordingly move

10    for the additional one-point reduction.

11          THE COURT:  And I'll grant that motion.

12          MR. EBERT:  Thank you.

13          THE COURT:  Thank you.  And I would add that I

14    think that acceptance of responsibility for purposes of that

15    motion and acceptance of responsibility for what sentence is

16    overall arrived at and appropriate here are distinct things

17    on some levels, if that makes any sense.

18          All right.  Under the statute of conviction, one

19    of the statutes of conviction, Mr. Mays' conviction for

20    receipt of child pornography carries a five-year mandatory

21    minimum term of imprisonment.

22          I determine the guidelines apply as follows.

23          We have a Total Offense Level of 29; a Criminal

24    History Category of IV; an imprisonment range of 121 to 151

25    months; a supervised release range of five years to life; a

1  fine range in the amount of $30,000 to $250,000; a special

2  assessment that is mandatory in the amount of $200; and

3  restitution that also is mandatory.

4       Mr. Ebert, does the Government have any objections

5  or corrections to those rulings given my findings on the

6  objections?

7       MR. EBERT:  No, Your Honor.

8       THE COURT:  Mr. Richman?

9       MR. RICHMAN:  No, Your Honor.

10      THE COURT:  Ms. Paulose?

11      MS. PAULOSE:  No, Your Honor.

12      THE COURT:  Okay.  Thank you.

13      We have no departure motions, is that correct,

14  Mr. Ebert?

15      MR. EBERT:  That's correct, Your Honor.

16      THE COURT:  And, Mr. Richman, same question, no

17  departure motions, right?

18      MR. RICHMAN:  Correct.

19      THE COURT:  It's my understanding that the

20  Mandatory Victims Restitution Act of 1996 applies here.

21  Have the parties reached a stipulation with respect to

22  restitution?

23      Mr. Ebert?

24      MR. EBERT:  Your Honor, I don't know that there is

25  a stipulation *per se*, but there is the dollar amount cited

1    in the plea agreement, and I think that that dollar amount,

2    if I'm not mistaken, is consistent with some of the

3    assertions of the defendant in the PSR as to the different

4    transactions that result in the total calculation.  I think

5    off the top of my head it's $341,222, if I'm not mistaken.

6              MS. PAULOSE:  That's correct, Your Honor.  It's

7    paragraph 139 of the PSR.

8              THE COURT:  All right.  And no objection to that

9    paragraph, so that that number then is locked in as a

10   restitution amount with respect to the lawyer fraud charge,

11   correct?

12             MR. EBERT:  Yes, Your Honor.

13             THE COURT:  But with respect to the child porn

14   charge, do we have a separate restitution question or

15   problem there?

16             MR. EBERT:  No, Your Honor.  We have conferred

17   with the victim of that offense and discussed that issue and

18   there is not a restitution request.

19             THE COURT:  Okay.

20             MR. EBERT:  Your Honor, if I might, turning back

21   to the first restitution issue, an additional item I just

22   want to clarify for the Court.

23             THE COURT:  Sure.

24             MR. EBERT:  On February 4th, the Government

25   received some additional records from the two victims of the

1    wire fraud offense and I provided those to the Probation

2    Office and to opposing counsel.

3           I just want to make the Court aware that we've

4    discussed some of those records with the victims and

5    discussed some of their rights and opportunities if they

6    were to further pursue some of the items that are included

7    in those records, because the number is higher than the

8    number, and based upon the result of those discussions, the

9    number in the plea agreement is what we've arrived at from

10   the victims that they would wish to see in the restitution

11   order.

12           THE COURT:  All right.  Thank you for that.

13           MR. EBERT:  Thank you.

14           THE COURT:  Okay.  Mr. Mays, this is how things

15   are going to go from here.

16           Mr. Ebert's going to have an opportunity to speak

17   and advocate for a sentence that the Government thinks is

18   appropriate here.  Once he's done I'll give both Mr. Richman

19   and Ms. Paulose an opportunity to speak, or if there's a

20   designated representative as between one of those two, that

21   person will have an opportunity to speak.  And when he or

22   she or both are done, then you'll have an opportunity to say

23   anything that you'd like to say here today about an

24   appropriate sentence.

25           Does that make sense?

1          THE DEFENDANT:  It does, Your Honor.

2          THE COURT:  All right.  And then when you're done

3     speaking, at that point we will hear from victims who wish

4     to be heard this morning.

5          All right.  Mr. Ebert?

6          MR. EBERT:  Thank you, Your Honor.

7          The Government, Your Honor, is requesting a

8     sentence per the plea agreement that was negotiated.

9     Consistent with that plea agreement, the Government is

10    asking for a sentence of 120 months.  And, Your Honor, that

11    in the Government's view is a reasonable sentence under the

12    application of the advisory guidelines.  It's warranted by

13    the facts of this defendant's background and by the nature

14    of his crimes, and it is a sentence that is sufficient but

15    not greater than necessary to achieve the fundamental goals

16    of sentencing.

17          However, even if the Court were to agree with some

18    or all of the defendant's frontal attacks on the

19    applicability of some or all of the guidelines provisions

20    themselves, and even if the Court were to set aside the

21    guidelines altogether, the United States respectfully

22    submits that a sentence of 120 months is nonetheless

23    eminently reasonable, warranted and necessary nonetheless

24    based upon the application of the 3553(a) factors.

25          And so first turning to Mr. Mays' history and

1    characteristics, even though he is just 26 years old, he has

2    already amassed a significant criminal history.  He has a

3    criminal record in which he has rightfully earned placement

4    in Criminal History Category IV, and it's for such crimes as

5    stalking, burglary, and violating an order for protection.

6         His history reveals similar characteristics to

7    those that were central and prominent in his two pending

8    convictions before this Court; namely, his predatory nature,

9    cruelty, and a brazen desire to exploit the vulnerable.

10        Now, Defendant appears to suggest that his

11   criminality and his very serious crimes here are somehow the

12   apparent result of a turbulent upbringing and behavioral

13   issues that derive from his youth.  To the extent that those

14   are parts of his background, there's no dispute that that is

15   unfortunate.  However, countless people in this city and in

16   this district endure difficult circumstances in their youth,

17   from broken homes to some of the behavioral issues the

18   defendant cites to.  But those countless other people most

19   certainly do not, they do not go on to commit repeated

20   criminal acts like Mr. Mays, and they certainly do not go on

21   to commit criminal acts that are as cruel and as destructive

22   as those perpetrated by the defendant here.

23        Simply put, Your Honor, there is nothing in

24   Defendant's history or background that would serve to

25   justify his crimes, and there is certainly nothing in his

1     background or his history that would serve to mitigate his

2     crimes, and so a 120-month sentence is appropriate in light

3     of his history and characteristics.

4           Moving on to the nature and the circumstances of

5     these offenses, both are extremely serious.

6           For one of his crimes, the fraud scheme, for

7     almost half a year he perpetrated a fraud scheme that could

8     hardly be more depraved.  He targeted E.W. and I.W.,

9     parents, and he exploited the love and the concern that they

10     have for their son.  He tricked them into believing their

11     son faced imminent criminal, federal terrorism charges, and

12     he tricked them into believing their son faced bogus legal

13     troubles, and for what?  He terrorized them all so that he

14     could extract as much money from them for himself and to get

15     as much as he possibly could.

16           He manipulated I.W. because of her religion.  He

17     exploited sensitivities unique to her faith by manufacturing

18     absurd lies, that the FBI was supposedly watching her son,

19     because according to the defendant, like I.W., her son was a

20     Muslim.  This, Your Honor, is the nature and the

21     circumstances of this defendant's offense, depraved and

22     ruthless.

23           And, of course, it's not limited to fraud.  With

24     equal amounts of ruthlessness and depravity, he engaged in

25     the child pornography offense for which he's convicted.

1          According to the submissions by the defense, by

2     the defendant's own reckoning, Mays somehow knew not only

3     that his victim was in fact a minor, but by his own

4     reckoning of the events to the Court, he understood her to

5     be a victim of commercial sex trafficking.  That is

6     staggering.  That means that knowing full well the unique

7     vulnerabilities of his minor victim, what did he do?  He

8     proceeded to have sex with her and to further commit the

9     child pornography offense for which he's now convicted.  It

10    shocks the conscience.

11         And so whether it is fraud or crimes involving

12    children, Mr. Mays' serious offenses have no place in

13    society, and respectfully, Your Honor, Defendant's sentence

14    must account for the audacity of his crimes against his

15    victims, for the magnitude of the financial crime that he

16    inflicted upon his fraud victims, and for the incalculable

17    emotional trauma that he has inflicted upon his victims.

18         His sentence must also account for the stunning

19    degree of greed, dishonesty, and disregard for his victims

20    that he has displayed time and time again, and the

21    Government respectfully asserts that a sentence of 120

22    months will in part account for the nature and seriousness

23    of Defendant's crimes.

24         Finally, Your Honor, a sentence of 120 months is

25    necessary to afford as much deterrence as possible and to

1    protect the public as much as possible.

2          The PSR at pages 10 through 19 recounts

3    Defendant's various run-ins with the law in just the last

4    few years.  It takes nine full pages to capture his various

5    criminal conduct, involving orders for protection among

6    other crimes that harm the public.  It speaks volumes about

7    the harm he inflicts upon the public generally, of course to

8    say nothing further about the harm that he's already

9    committed with the specific victims here.

10          In their statement to Probation, E.W. and I.W.

11    asserted that they in particular, the victims of one of his

12    current crimes, fear that if he is not kept in prison long

13    enough, then they fear that he will, quote, go on to destroy

14    some other person's life like he did ours, unquote, and I

15    think their statement is well put.

16          And for that reason, to protect the victims in

17    these two cases and to protect the public generally, the

18    United States again respectfully submits that this Court

19    impose a substantial sentence of 120 months.

20          Thank you.

21          THE COURT:  Thank you.  Mr. Richman?

22          MR. RICHMAN:  Your Honor, before I begin, I want

23    to make a confession of sorts.

24          Mr. Mays had hoped and had arranged for his

25    mother, various family members and friends, to all be

1    present at the sentencing.  The reason they're not here is

2    that I screwed up.

3              The sentencing in this case had been scheduled for

4    different days and different times.  Somehow I had in my

5    calendar that the sentencing was today at 2:00.  I

6    communicated that to Mr. Mays' mother several weeks ago and

7    she took steps to communicate to everyone who was going to

8    be here, which I think was going to be somewhere between ten

9    and 20 people.

10             It was yesterday afternoon that I became aware

11   that sentencing was today at 11:00.  It didn't occur to me

12   to notify Ms. Mays.  It wasn't until this morning at 10:00

13   when my client informed me that his mother still thought

14   that the sentencing was at 2:00.  I called her.  She was

15   extremely upset, but told me that she could not be here on

16   such short notice.  I apologized profusely.

17             So I want the Court to know and for the record to

18   be clear that I made that mistake.  That is the reason that

19   Mr. Mays' supporters are not here.  I can assure the Court

20   that they wanted very much to be here.

21             With that said, Your Honor, let me turn to my

22   sentencing argument.

23             The only reason that Mr. Mays is facing a possible

24   punishment in double digits is because he happens to fall

25   into a bizarre gap in the law.  While the age of consent for

1     sexual relations is 16 in Minnesota, the age of consent

2     under federal law for making visual depictions of that

3     conduct is 18.  So while it is legal for a 16 -- for an

4     adult to have sex with a 16-year-old, if he takes a naked

5     picture of that same 16-year-old, that's a crime.

6          In this case S.D. was 17 years old at the time of

7     this offense.  Mr. Mays was only seven years older.  It was

8     perfectly legal for the two of them to engage in sexual

9     relations.

10         In **United States vs. Rouse**, Judge Beam commented

11    critically on this situation.  He found a prosecution in

12    similar circumstances -- and I quote -- "unseemly and quite

13    possibly unfair," and he urged a legislative solution to do

14    away with that gap.  And while the Government talks about

15    this case shocking the conscience, in fact, there is nothing

16    about Mr. Mays' conduct with respect to the child

17    pornography that shocks the conscience.  In fact, the

18    Government has to this day failed to justify this

19    prosecution in light of Judge Beam's criticisms, and yet it

20    is the child pornography guidelines that are driving the

21    sentence in this case.

22         In its sentencing memorandum I was very interested

23    to see how the Government characterized the severity of the

24    child pornography offense.  First they said that S.D. was

25    victimized by nonconsensual sex, to which, as we've already

1    indicated, Mr. Mays strenuously objects.  S.D. is in the

2    back of the courtroom.  She may again claim that the sex was

3    nonconsensual and it may have been in her mind.  That was

4    never communicated to Mr. Mays.  We continue to dispute it.

5    And there is no evidence in the videos demonstrating that

6    S.D. was anything other than a willing partner.

7            Next they claim that S.D. was a victim of the

8    recording herself -- itself, yet again she was a willing

9    participant.  This is not a case where there was some hidden

10   camera or surreptitious recording.  It was well-known to

11   S.D. that the videos were being made.  In fact, on one of

12   the two occasions that they engaged in relations they used

13   her phone, so she was not victimized by making recordings

14   that she at least at the time was a willing participant to.

15   She trusted Mr. Mays to make these recordings and he lived

16   up to that trust, never distributing the videos and, as the

17   Government has conceded in the plea agreement, never even

18   intending to distribute the videos.

19           And so as Judge Beam noted in **Rouse**, there was

20   really no victim to this crime, even though S.D. now may say

21   otherwise.  And so faced with no victim and barely any

22   crime, the Government focuses its attention on the fraud.

23   It's no great surprise that its sentencing memorandum spends

24   six of its eight pages on the fraud, because it is the far

25   more serious of the two offenses, and that is the offense,

1      therefore, that should drive the guideline range.

2              Even with the enhancement for abuse of trust which

3      the Court has adopted, even though the parties agreed

4      otherwise in the plea agreement, the guideline range

5      applicable to the fraud is 41 to 51 months, and so the

6      Government's sentencing argument is really premised on a

7      clever bait-and-switch.  The fraud is very serious, so

8      therefore you should apply the child pornography guidelines

9      and impose a ten-year sentence, yet it is the 41 to 51

10     months, the guidelines applicable to the fraud, which should

11     be the appropriate starting point.

12             The Government in this case achieved its purpose

13     by charging Mr. Mays with production of child pornography.

14     At the beginning of this case he faced a mandatory minimum

15     15 years for using his cell phone to record legal sex with a

16     17-year-old, 15 years.  And so as the Government hoped,

17     Mr. Mays was bludgeoned into accepting a plea offer that

18     resolved both of these cases to get that 15 years off the

19     table.  Its strategy was to increase its bargaining power

20     and it achieved that objective, but to now pretend that the

21     child pornography guidelines have any bearing whatsoever on

22     the offense conduct in this case and the appropriate

23     sentence is simply absurd.

24             A six-year sentence is a reasonable disposition to

25     address both of these offenses.  The child pornography

1    guidelines are grossly out of whack.  Even the Sentencing

2    Commission agrees that they're broken.  Two-thirds of child

3    pornography defendants receive downward variances because

4    the courts have refused to give them any deference

5    whatsoever, and the situation here is substantially worse.

6    Not only were these legal sexual activities that were being

7    recorded on a cell phone, in addition, Mr. Mays receives a

8    five-level enhancement for essentially being a serial sexual

9    abuser for having a pattern of sexual abuse because he and

10   S.D. had sex twice.  In the circumstances of this case that

11   enhancement is completely irrational.

12          He receives another five-level enhancement because

13   his nine video clips -- which should have been two had his

14   cell phone's software been a little different -- his nine

15   video clips somehow equate to 600 images, so he is treated

16   as among the worst of the worst child pornography offenders,

17   again, completely irrational.

18          Mr. Mays deserves to be punished for his fraud

19   offense.  The guidelines say an appropriate punishment for

20   that offense is 41 to 51 months, a sentence of six years,

21   one that starts with the fraud guideline and adds a small

22   increase to reflect that Mr. Mays fell into a small

23   legislative gap, is the appropriate disposition in this

24   case, Your Honor.

25          And finally, Your Honor, we would ask that the

1    Court make a recommendation to the Bureau of Prisons that

2    Mr. Mays be permitted to serve his sentence at FCI Sandstone

3    so he can be as close as possible to his family.

4            Thank you, Your Honor.

5            THE COURT:  Thank you.  Ms. Paulose, are you

6    speaking today?

7            MS. PAULOSE:  Mr. Richman is speaking for both of

8    us.  Thank you, Your Honor.

9            THE COURT:  Thank you.

10           Mr. Mays, this is your opportunity to say anything

11   you'd like to say with regard to an appropriate

12   sentence -- actually, yes, Mr. Mays.  This is your

13   opportunity to say anything that you'd like to say with

14   respect to an appropriate sentence.  I'm going to ask you to

15   come up to the podium right there and say what you'd like to

16   say.

17       (Defendant approaches podium)

18           THE DEFENDANT:  Your Honor, I came prepared to

19   give a statement.  I no longer think this statement is

20   appropriate for me to read.

21           I've listened to arguments on both sides, my

22   attorney as well as the Government, and I have to admit I am

23   wrong.  The Weiners were victimized by what I did, a hundred

24   percent.  There's no question about it.  The $341,000 that I

25   talked to Mr. Smith about is accurate.  And like I told him

1    the day we met, that's something that I have to pay because

2    that's what I did.

3            My attorneys have told me it is my right to give a

4    statement here and that's what I want to do.

5            Your Honor, I am here today for my actions and my

6    actions alone.  I understand that what I did was wrong in

7    these cases.  Do I understand certain things about the law?

8    Of course not, because I am not an attorney, Your Honor.

9            I want to first apologize to the Weiners for the

10   appropriateness in the actions I incurred to make them have

11   the issues they have today.

12           In this last year I've had more time than I've

13   ever had before to do nothing but really sit and think about

14   what I've done.  The worst punishment anyone could ever have

15   is to make someone sit in a room 22 hours a day and do

16   nothing but think.  I've had time to see that I did nothing

17   but wrong in this case.  That wrong was motivated by nothing

18   but greed and I apologize to the Weiners for that.  I

19   apologize not only for the money that was taken, but the

20   pain I've caused their marriage, Your Honor.

21           Let me say I am completely responsible for the

22   financial issue and I am fully responsible and willing to

23   pay that back.

24           I now know I did what I did to the Weiners because

25   I felt like I was not smart enough to legally live a legal

1    lifestyle.  Sitting in Sherburne County for the last year,

2    Your Honor, has shown me that I was foolish for believing

3    that, not only because what the Weiners have said, but

4    mainly what other people have said:  I have a gift.

5         I plan on using the time I get here today, Your

6    Honor, to do nothing but use that gift in a more positive

7    way.  I've looked at taking college courses and things like

8    that while I'm incarcerated in the BOP, and that's why we

9    requested Sandstone today, Your Honor, because that location

10   will help me look at certain courses that I want to take to

11   help me improve in positive ways.

12        I am very sorry for the conduct and I apologize to

13   anyone I may have harmed in any way, shape or form.

14        Thank you, Your Honor.

15        THE COURT:  Thank you.

16        All right.  At this time we'll hear from any

17   victims that wish to be heard today.  What I'll do is refer

18   to you by your initials.

19        Is it my understanding that victim I.W. wishes to

20   speak today, is that correct?

21        (Victim I.W. standing)

22        THE COURT:  All right.  Then I'd ask victim I.W.

23   to come to the podium, please.

24        (Victim I.W. approaches podium)

25        MR. EBERT:  Your Honor, she has requested that we

1   stand alongside of her.  Is that okay with the Court?

2            THE COURT:  That's just fine.

3            MS. I.W.:  Your Honor?

4            THE COURT:  Good morning.

5            MS. I.W.:  Good morning.  My name is Issan Weiner.

6   My husband Earnie and I had our life ruined by that

7   (indicating) man, Otis Mays, Jr., or, as we knew him, Chris

8   Harrison.  He destroyed our life in every way.  He took all

9   our hard-earned, total of $600,000, but worse than that, he

10  nearly destroyed our marriage and terrorized our son.

11           He -- he led us to believe our son going to prison

12  he will pay -- if we didn't pay to clear his name.  His plot

13  was so evil, yet so convincing.  We were desperate to do

14  whatever he said.

15           On his last visit with our son present he asked

16  for $80,000 to save Adam from going to the jail.  Adam was

17  crying, "Please, Mom, don't want to go to the jail.  I will

18  kill myself."  That's when we finally went to the police to

19  report all that had happened.

20           Your Honor, we hope that Otis will get maximum

21  sentence so he won't be free to do this to anyone else.

22           Thank you.

23           THE COURT:  Thank you.

24           Just so that I make sure I understand how things

25  are proceeding here, is it my understanding that victim E.W.

1    does not wish to speak today, is that correct?  I heard a

2    yes.

3              MR. EBERT:  That is correct, Your Honor.

4              THE COURT:  Thank you.  And it's my understanding

5    that victim S.D. also wishes to speak today, so I would

6    invite her to come to the podium at this time.

7         (Victim S.D. approaches podium)

8              MS. S.D.:  Hello, Your Honor.

9              THE COURT:  Good morning.

10             MS. S.D.:  I just want to say that I did meet him

11   when I was 16, but it wasn't -- I didn't meet him fully all

12   the way, just him.  Before then, yes, I almost did get

13   exploited and he told me that he was a lawyer and that he

14   could possibly help me because of the person who was trying

15   to.  Instead, it just got worse.

16             I mean, I throughout this whole case have

17   witnessed and seen various videos, various of not only

18   myself, but other girls, and I feel like it was wrong.

19             You said that you were this lawyer that wants to

20   help people get out of it, but instead you're making it.

21   And not only did he say that.  The three other girls that

22   were involved in this I still talk to this day, and we all

23   say the same thing.  He told us that we were going to jail

24   for child pornography when he was the one making it.

25             And I just -- I don't even know how to feel.  It's

 1     been awhile.  I haven't seen him since I was 16, and to stay

 2     here in court and still explain myself, I feel like I'm a

 3     very strong person.  I have a daughter and now I have to,

 4     like, teach and show my daughter not even to be around

 5     people like him, not to fall for anything, be your own

 6     person.  Like, it's very, very hard, because he literally

 7     made me feel like I couldn't do anything.  I was scared to

 8     be outside.  He knew where my school was, he knew my age, he

 9     knew everything.  He came and picked me up from school.

10     Literally, I had the FBI come to my school and tell them,

11     like, if he comes to my school, please -- like, please

12     arrest him or something.  I had to tell my school the

13     situation that I was in.  I didn't even feel safe at school.

14     I dropped out of school.

15            Like, it's just -- like, I feel like he's not

16     sorry.  He's not remorseful.  He feels sorry for fraud, but

17     he don't feel sorry for doing what he did to any of the

18     girls, either me.  And I feel like he's not serving enough

19     time, because what if he gets out and still does the same

20     thing?  Like, what if he -- what if my daughter gets older

21     and he finds my daughter and does the same thing?  Like, I

22     don't -- I just feel like -- I just feel like it's wrong, I

23     really do.

24            Because at the end of the day, like, I've never

25     been scared and I've always been a strong person.  I

1    testified to everything and I'm the only person.  I don't

2    know what he told everybody else.  But me, I'm strong and

3    I'm a good-hearted person and I just felt like this was not

4    supposed to happen to me.  I feel like my life got ruined.

5            I never finished school because I was scared to go

6    outside.  Like, my life is not together and, like, I have

7    nothing together because of this situation.  Like, I sit

8    here in this court and hear what they're saying and I look

9    at my daughter and I'll be like -- it flashes back to me:

10   What if this happens to my daughter?  And I just -- I'm

11   sorry.

12           THE COURT:  It's okay.

13           MS. S.D.:  I just feel like he's not sorry for

14   anything that he did.  He's not.  I feel like when I came in

15   this court today I was being antagonized and that I would

16   not come up here and speak, but I feel like my voice needs

17   to be heard for every girl that he's ever did this to.  That

18   is, it's not right and that he does need to be remorseful

19   for everything that he did, even though it seems like he

20   doesn't.

21           And I just -- I pray for him and I wish the best

22   for him, but I feel like he's wrong.  I mean, you can

23   forgive, but I will never forget what he did to me, Judge, I

24   will never, the things that were said, the things that was

25   did.  And, like, I went through this whole case by myself,

1    nobody else.  I testified, I got subpoenaed, I did

2    everything that I could to help these other girls and

3    everybody just vanished.

4         And I just want everybody to know that it's wrong

5    and that I just -- I don't think he's getting enough time.

6    I really don't, because ...

7         (Pause)

8          If I could, I would tell you the whole story from

9    beginning to end, but that would take a very long time.  And

10   I know you have everything and all the evidence, pictures,

11   videos, everything, so you know and you've seen everything.

12   And I just -- I just really hope that he gets the time that

13   he really does deserve.

14         And that's all I really have to say, because I

15   don't want to take up all your time.

16         THE COURT:  Thank you.

17         All right.  At this time we'll take a ten-minute

18   recess.  We'll return at approximately 12:40, at which time

19   we'll continue with the sentencing hearing.

20      (Recess taken at 12:28 p.m.)

21                    *     *     *     *

22      (12:41 p.m.)

23                    IN OPEN COURT

24         THE COURT:  Please be seated.

25         It's now time for sentencing.  Mr. Mays, I'd ask

1   you to come to the podium, please, with Mr. Richman and

2   Ms. Paulose.

3        (Defendant, Mr. Richman, and Ms. Paulose approach

4   podium)

5        THE COURT:  Otis Ray Mays, Jr., you have been

6   charged with and you have pleaded guilty to one count of

7   receipt of child pornography in violation of Sections

8   2252(a)(2) and (b)(1) of Title 18 of the United States

9   Code -- that's in Criminal File Number 19-75 -- and one

10   count of wire fraud in violation of Section of 1343 of Title

11   18 of the United States Code in File Number 19-76.

12        It is considered and adjudged that you are guilty

13   of these offenses based on your plea of guilty.

14        It is the judgment of the Court that you, Otis Ray

15   Mays, Jr., be committed to the custody of the Bureau of

16   Prisons for imprisonment for a term of 132 months.

17        I'll recommend FCI Sandstone.

18        On release from imprisonment, it is ordered that

19   you serve a supervised release term of ten years.

20        The law requires me to review with you today the

21   conditions that you must abide by while you are on

22   supervised release, so I'm going to do that now.  At the

23   conclusion of that, I'll ask you or invite you to be seated

24   again and I'll explain the reasons for my sentence.

25        While on supervised release you must comply with

1    the follow mandatory conditions:

2         You shall not commit any crimes, whether federal,

3    state, or local.

4         You shall not unlawfully possess a controlled

5    substance.

6         You shall refrain from any unlawful use of a

7    controlled substance and submit to one drug test within 15

8    days of release on supervised release and at least two

9    periodic drug tests thereafter as determined by the Court.

10        You shall cooperate in the collection of a DNA

11   sample as directed by the United States Probation Office.

12        And you shall notify the Court of any material

13   change in your economic circumstances that might affect your

14   ability to pay the restitution or special assessment that

15   I'll also order as part of your sentence.

16        It is also required that you abide by the standard

17   conditions of supervised release that have been adopted by

18   this district, and a copy of those will be provided to you

19   at a future date.

20        While on supervised release, you must comply with

21   the following special conditions:

22        You shall complete an immediate assessment or

23   participate in a program for substance abuse as approved by

24   the probation officer upon release or relapse during the

25   term of supervised release.  That program may include

1    testing and inpatient or outpatient treatment, counseling,

2    or a support group.  Further, you shall contribute to the

3    costs of such program as determined by the Probation Office

4    Co-Payment Program, not to exceed the total cost of

5    treatment.

6         You shall submit your person, residence, office,

7    vehicle, or an area under your control to a search conducted

8    by the United States Probation Office or supervised

9    designee, at a reasonable time and in a reasonable manner,

10   based upon reasonable suspicion of contraband or evidence of

11   a supervision violation.  You shall warn residents or third

12   parties that the premises and areas under your control may

13   be subject to searches pursuant to this condition.

14        You shall not possess or use a computer or have

15   access to any online service capable of accessing

16   pornography or engaging in financial transactions without

17   the prior approval of the U.S. Probation and Pretrial

18   Services Office.  Your cooperation shall include, but not be

19   limited to, allowing installation of a computer and Internet

20   monitoring program and identifying computer systems,

21   Internet-capable devices, and similar memory and electronic

22   devices to which you have access.  Monitoring may include

23   random examinations of computer systems along with Internet,

24   electronic, and media storage devices under your control.

25   The computer system or devices may be removed for a more

1    thorough examination, if necessary, and again, you shall

2    contribute to the cost of such monitoring services, based on

3    ability to pay, as deemed appropriate by the U.S. Probation

4    Office.

5           You shall not possess, view, access, or otherwise

6    use child pornography.

7           You shall provide the probation officer access to

8    any requested financial information, including credit

9    reports, credit card bills, bank statements, and telephone

10   bills.

11          You shall not associate with persons under the age

12   of 18 except in the presence of a responsible adult who is

13   aware of the nature of your background and current offense

14   and who has been approved by the probation officer.

15          You shall participate in sex offender and/or

16   mental health treatment as approved by the probation officer

17   and shall submit to risk assessment which may include, but

18   is not limited to, physiological testing and polygraph/truth

19   verification testing.  Polygraph testing may be used

20   following completion of your primary treatment as directed

21   by the probation officer to monitor adherence to the goals

22   and objectives of treatment.  Sex offender assessments and

23   treatment are to be conducted by a therapist approved in

24   advance by the Probation Office.  Further, you shall

25   contribute to the costs of such treatment as determined by

1    the Probation Office Co-Payment Program, not to exceed the

2    total cost of treatment.

3         You shall have no contact with the victims.  That

4    includes letters, communication devices, audio or visual

5    devices, visits, or any contact through a third party as

6    well without the prior consent of the probation officer.

7         You shall be prohibited from participation in any

8    form of gambling.  You shall not enter any casino or

9    gambling establishment.  This prohibition includes, but is

10    not limited to, online gambling, charitable gambling,

11    wagering, pull tabs, lottery or lottery scratch-off games or

12    the like.

13         You shall be prohibited from incurring new credit

14    charges or opening additional lines of credit without

15    approval of the probation officer.

16         You shall refrain from purchasing or possessing

17    any electronic equipment, including video and still cameras,

18    which allows for covert monitoring or photography, without

19    the prior approval of the probation officer.

20         I'll impose no fine.

21         I'll order restitution in the amount of $341,222.

22         The interest requirement is waived in accordance

23    with 18 U.S.C., Section 3612(f)(3).

24         Over your period of incarceration you must make

25    payments toward your restitution obligation of either

1    quarterly installments of a minimum of $25 if working

2    non-UNICOR, or a minimum of 50 percent of your monthly

3    earnings if working UNICOR.

4           I recommend that you participate in the Inmate

5    Financial Responsibility Program while incarcerated.

6    Payments are to be made payable to the Clerk, United States

7    District Court, for disbursement to the victims.

8           You must pay a special assessment in the amount of

9    $200 to the United States.  That's due immediately.

10          I'll not require you to pay any assessment to the

11   Domestic Trafficking Victims Fund, because I find that you

12   are indigent.

13          Pursuant to 18 U.S.C., Section 2253, and Rule

14   32.2(b)(4) of the Federal Rules of Criminal Procedure, your

15   interest in the property described in the preliminary order

16   of forfeiture is forfeited to the United States.  That's the

17   HP Envy laptop computer.

18          At this time, Mr. Mays, I would invite you and

19   Mr. Richman and Ms. Paulose to be seated and I'll explain

20   the reasons for my sentence.

21       (Defendant, Mr. Richman, and Ms. Paulose seated)

22          THE COURT:  In determining what sentence to

23   impose, I've treated the range recommended by the guidelines

24   as the starting point and the initial benchmark as the law

25   requires.  I have not presumed that the guidelines range is

1    reasonable.  I've instead considered all of the factors

2    described in 18 U.S.C., Section 3553(a), including the need

3    for the sentence to be sufficient but not greater than

4    necessary to comply with the purposes set forth in Section

5    3553(a)(2).

6           Having considered all of those factors, including

7    the nature and circumstances of the offense and the history

8    and characteristics of Mr. Mays, I find that the sentence

9    I've imposed is sufficient but not greater than necessary to

10   reflect the seriousness of Mr. Mays' offenses and to provide

11   just punishment for those offenses, to deter Mr. Mays from

12   committing crimes in the future, to deter others from

13   committing this or similar crimes in the future, to protect

14   the public from Mr. Mays, and to provide Mr. Mays with

15   needed care, treatment, and training.

16          In particular as to the sentence of imprisonment,

17   when I talk about the history and characteristics of the

18   defendant, I usually start by describing what I think are

19   mitigating factors.  Those aren't easy to find here.

20          It is true that Mr. Mays faced challenges in his

21   upbringing.  I'm thinking here of his parents' divorce, his

22   mother's drug use, and his adolescent mental health

23   challenges, but these pale in comparison to others who I

24   have seen in his position.

25          He did not grow up in poverty.  He did not grow up

1    amid violence, for example.  The fact is that the challenges

2    Mr. Mays faced are faced by many who did not resort to

3    crime.  The fact is that Mr. Mays benefited from an

4    educational system that tried to meet his needs with

5    individualized educational programming.  Many young people

6    face mental health challenges in their adolescence.  They

7    don't resort to crime.  When I try to answer the question of

8    why Mr. Mays engaged in these criminal acts, the bottom line

9    is that I see no clear mitigating factors.

10           The circumstances of the offenses suggest that we

11    face here a real need to protect the public and I am focused

12    on that.  Having sex with a 17-year-old girl may not be a

13    crime itself, but recording it on multiple occasions

14    obviously is.

15           By Mr. Mays' own account, he victimized a girl who

16    was a victim already, and he knew it.  That reflects the

17    same kind of penchant for manipulation and

18    get-what-I-want-at-all-costs-to-others mentality that is

19    reflected in the wire fraud conviction, and I am deeply

20    concerned about the facts of the child porn conviction.

21           I'm also deeply concerned about the facts of the

22    wire fraud.  That was predatory, calculating, and consistent

23    again with the motive of doing anything for personal gain.

24    Mr. Mays stole a couple's retirement savings.  He nearly

25    ended their marriage and his scheme required cold,

1     calculated planning.  At the change of plea hearing and

2     again today, Mr. Mays strikes me as an intelligent and

3     well-spoken person, and I'm afraid here those attributes

4     were central to his ability to perpetrate certainly the

5     crime of wire fraud.

6              This was not behavior that was out of character

7     with an otherwise law-abiding life.  Mr. Mays' criminal

8     history reflects no respect for the law.  Indeed, he was on

9     probation for a felony stalking offense when he committed

10    these crimes, and I have not seen anything here to suggest

11    Mr. Mays has owned up to his mistakes or demonstrated

12    sincere remorse with respect to S.D.

13             The written statements that Mr. Mays provided as

14    part of his presentence investigation are unremarkable and

15    with respect to the crime involving S.D. include a classic:

16    "I'm sorry if my actions harmed a victim" non-apology

17    apology.

18             I appreciate that the longest previous sentence

19    Mr. Mays has served was 365 days in jail and that this

20    sentence is a much greater graduated sanction that I might

21    impose if I were thinking about only that fact; that is, the

22    graduated sanction piece.  But other facts here persuade me

23    that a lengthy albeit within-guidelines sentence is

24    necessary, particularly, as I have said, to protect the

25    public from Mr. Mays.

1        I'd also here cite Sentencing Guidelines Section

2    3D1.4(c).  It says that I'm to disregard Mr. Mays' wire

3    fraud conviction in determining a combined offense level,

4    but it also says that, quote, it "may provide a reason for

5    sentencing at the higher end of the sentencing range for the

6    applicable offense level."

7        Based upon the facts of this case, I am concerned

8    that Mr. Mays will do this again and I hope with all

9    sincerity that Mr. Mays proves me wrong.

10        I hope with all sincerity that he takes advantage

11    of the educational and vocational training offered through

12    the Bureau of Prisons in a way that improves his chances on

13    release.

14        I've reviewed information regarding sentences

15    imposed in this district on individuals who are situated

16    similarly to Mr. Mays.  I find that the sentence will not

17    result in unwarranted sentencing disparities.

18        As we've already discussed, mandatory restitution

19    applies in these cases and I have ordered it for that

20    reason.

21        As to the term and conditions of supervised

22    release, I'll say that the drug treatment terms are

23    warranted by Mr. Mays' opioid abuse and his interest in that

24    programming.

25        The financial conditions are justified by the

1    nature of his wire fraud crime.

2          And the gambling limits are justified by his

3    history of gambling and losing large sums of money that he

4    probably could not afford to lose and he certainly cannot

5    afford to lose when he's facing a restitution obligation of

6    the order that we have here.

7          Mr. Mays, the law requires me to inform you of

8    your right to appeal, so I'm going to do that now.

9          You have the right to appeal your conviction if

10   you believe your guilty plea was unlawful or invalid for any

11   reason.  You also have the right to appeal your sentence.

12         If you wish to appeal your conviction, your

13   sentence, or both, you must file a notice of appeal within

14   14 days of the filing of the judgment of conviction in this

15   case.

16         If you cannot afford to pay the costs of an

17   appeal, you can ask for permission to appeal

18   *in forma pauperis*.  In other words, you can request

19   permission to be excused from paying any fees or costs.  If

20   you make such a request, the Clerk of Court will file a

21   notice of appeal on your behalf.

22         The presentence investigation report will be kept

23   in the Court's files under seal.  If you file an appeal,

24   that report will be forwarded to the United States Court of

25   Appeals for the Eighth Circuit.

1          Mr. Ebert, does the Government wish to move to

2     dismiss Counts 1 through 9 in File 19-75, and Counts 1 and 2

3     in 19-76 as to Mr. Mays at this time?

4          MR. EBERT:  Consistent with the plea agreement,

5     yes, it does, Your Honor.

6          THE COURT:  That motion's granted and those counts

7     are dismissed.

8          Mr. Richman, any filings that we need to be

9     worried about getting under seal here?

10          MR. RICHMAN:  No, Your Honor.

11          THE COURT:  Okay.  Mr. Ebert, any sealing issues

12     from the Government's perspective?

13          MR. EBERT:  No, Your Honor.

14          THE COURT:  Okay.  Mr. Mays will be remanded to

15     the custody of the United States Marshal at the conclusion

16     of this hearing.

17          Mr. Richman?

18          MR. RICHMAN:  Your Honor, I would like to note my

19     objections for the record.

20          First -- and this applies to both 19-75 and

21     19-76 -- we object to the sentence as being substantively

22     unreasonable and procedurally defective.

23          In particular, with respect to the procedural

24     problems with the sentence, we object to the Court's failure

25     to give any consideration to the ways in which the child

1    pornography guidelines unduly inflate the sentencing range

2    in circumstances -- especially in circumstances such as this

3    one and Judge Beam's comments in the **Rouse** case.

4            In addition, Your Honor, with respect to the

5    conditions of supervised release, we object to the condition

6    with respect to use of a computer and the Internet.  This

7    offense had nothing to do with the Internet.  That is a

8    condition -- although it is very common in child pornography

9    offenses, so I'm sure it was recommended by Probation, it

10   has no application in this case.  We object to it.

11           We object to the condition that he not associate

12   with people under the age of 18 without supervision.

13   Mr. Mays has a newborn daughter.  This will prevent him from

14   having contact with her.  There is nothing in the record to

15   suggest that Mr. Mays is a pedophile.  Again, that condition

16   is not supported by the record.

17           We object to sex offender treatment for the same

18   reason.

19           We object to -- I didn't get all of it --

20   something about cameras that can be used for covert

21   monitoring.  There was nothing covert in this case.  I don't

22   know if that condition applies to a cell phone.  I haven't

23   seen it, the condition, but I object to it.

24           In addition, Your Honor, we would ask -- in

25   addition to the recommendation of Sandstone, we would ask

1    that the Court also recommend that Mr. Mays be considered

2    for participation in the RDAP drug and alcohol treatment

3    program.

4              Thank you, Your Honor.

5              THE COURT:  Certainly.  Objections noted and I

6    will make that recommendation as well.

7              MR. RICHMAN:  Thank you, Your Honor.

8              THE COURT:  All right.  Anything further,

9    Mr. Ebert?

10             MR. EBERT:  No, Your Honor.

11             THE COURT:  Mr. Richman, anything further that you

12   think we need to cover here today?

13             MR. RICHMAN:  No, thank you, Your Honor.

14             THE COURT:  Ms. Paulose, anything further that you

15   think we need to cover here today?

16             MS. PAULOSE:  No, Your Honor.

17             THE COURT:  All right.  Thank you, everyone.

18   We'll stand adjourned.

19             (Proceedings concluded at 1:04 p.m.)

20                    *     *     *     *

21

22

23

24

25

**C E R T I F I C A T E**

I, **TIMOTHY J. WILLETTE,** Official Court Reporter

for the United States District Court, do hereby

certify that the foregoing pages are a true and

accurate transcription of my shorthand notes,

taken in the aforementioned matter, to the best

of my skill and ability.

*/s/ Timothy J. Willette*

**TIMOTHY J. WILLETTE, RDR, CRR, CRC**
Official Court Reporter - U.S. District Court
Warren E. Burger Federal Building & U.S. Courthouse
316 North Robert Street - Suite 146
St. Paul, Minnesota  55101
651.848.1224